UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| REBECCA & DOUGLAS KORWIN<br><br>Plaintiffs<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY<br><br>Defendant | Case No. 5:23-cv-01124<br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

Plaintiffs Rebecca Korwin & Douglas Korwin ("the Korwins") bring this complaint against Defendant State Farm Fire & Casualty Company ("State Farm"), alleging as follows:

### NATURE OF THE ACTION

1. This case arises from State Farm's failure to provide insurance coverage to the Korwins under a policy and special endorsement for water damage from drains in the Korwins' garage and basement, as well as State Farm's inadequate investigation and handling of the claim.

### PARTIES & JURISDICTION

2. The Plaintiffs are Dr. Rebecca Korwin and Dr. Douglas Korwin; they are a married couple; and both are Ohio citizens and residents. They live in Akron.

3. Defendant State Farm Fire & Casualty Company is an Illinois corporation with its headquarters and principal place of business at One State Farm Plaza, Bloomington, Illinois 61710. (This defendant is a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company, which also has its principal place of business in the State of Illinois.)

4. Under 28 U.S.C. 1332, this Court has original jurisdiction due to diversity of citizenship of the parties and the amount in controversy, which exceeds $75,000.

1

**THE KORWIN HOME**

5. The Korwins reside in a single-family home at 4821 Arbour Green Drive in Akron, Ohio (the "home"). The home was built in 1997.

6. The Korwins purchased the home in September 2019. As part of the purchase process, the Korwins had the home inspected by Steve Reckner, who conducted two inspections: The Korwins were present for the first and Dr. Douglas Korwin for the second. Mr. Reckner did not report any concerns regarding water in the basement or the house from outside the home; nor did he report any concerns with the sump pump. It was also noted on the original home inspection at the time of purchase that the sump pump was clean on the surface, free from mud and debris indicating no history of overflow.

7. From the date the Korwins moved into the home until June 21, 2020, the Korwins were not aware of any water coming up through either of the two drains in the garage, nor of any water or moisture on the basement floor.

8. The Korwin home's furnace system has a dehumidifier; the drip-pan (or "bin") had never had water in it.

9. During the Korwins' occupancy, the home has not had a hot water tank burst; nor have any pipes burst, leaked, or broken.

**MOVE IN & STORAGE**

10. When the Korwins moved into the home, an initial 5 to 10 boxes of items were stored in the garage: these boxes included chemicals, cleaning supplies, covers for outdoor furniture, and other similar items.

11. By the second week of June 2020, Dr. Rebecca Korwin had stored additional items in the garage that were taken from the master bedroom because she was going to have built-in closet units installed. These items, which were mostly clothing, were placed in boxes and stored in the garage. These items were those which Dr. Korwin did not wear on a daily basis, as well as purses, belts, bathrobes, boots, and similar items. The items stored in the garage from her bedroom closet constituted about 20%-30% of the closet's original

2

inventory. As a corporate executive, Dr. Korwin had acquired high-value clothing and accessories, some of which were stored in the garage.

12.     The Korwins also stored other items in the garage prior to the second week of June 2020. The garage can house four cars; the Korwins have three cars and park two in the garage and one outside, such that there is storage space in the places two other cars could have been parked in the garage. These other items were stored on the ground, not raised on pallets or shelving.

### THE INSURANCE CONTRACT

13.     State Farm and the Korwins agreed to insure the Korwin home pursuant to a written contract: Insurance Policy Number 35-EW-A940-2 ("the Policy"), which is attached to this Complaint as **Exhibit A**. The Policy had a coverage period of September 5, 2019, to September 5, 2020.

14.     The Policy included a special endorsement entitled "Back-Up of Sewer or Drain Endorsement" ("the Endorsement"). The Endorsement provided, among other things, that State Farm would "pay for accidental direct physical loss to the dwelling and covered personal property located within the dwelling, caused by back-up of water … from outside the residence premises plumbing system that enters through a sewer or drain located inside the interior of the dwelling; or that enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the dwelling designed to remove subsurface water drained from the foundation area."

15.     The Korwins kept a sump pump in proper working condition and performed the routine maintenance or repair necessary, if any, to keep the drain free from obstructions.

16.     The Korwins fulfilled their contractual obligation to pay State Farm an insurance premium to secure coverage under the Policy and Endorsement.

### THE LOSS IN THE GARAGE

17.     On June 21, 2020, following heavy rains, Dr. Douglas Korwin discovered water in the garage: water was coming up from the drains in the garage floor.

3

18. That night, the Korwins used a squeegee to push the standing water out of the garage and away from expensive equipment (like the riding lawnmower), Dr. Douglas Korwin's tools, and chemicals (like pesticides and kerosene).

19. The boxes containing Dr. Rebecca Korwin's bedroom closet items sustained water damage, destroying or rendering unfit the vast majority of these items.

### THE LOSS IN THE BASEMENT

20. Within 8 hours of the June 21 water event in the garage, Dr. Rebecca Korwin discovered water in the basement: portions of the wood floor, area rugs, baseboards and molding, the drywall, and throw rugs were visibly wet. She found the floorboards and woodwork on the floors were warping. About 10% of the flooring was warping—which has become more evident and obvious over time.

21. The Korwin basement has a finished area and an unfinished area. In the finished area there is a bedroom, a separate full bath, a living room, a bar/lounge, a gym, and a game room. The bedroom has wall-to-wall carpeting; the bathroom has tile; the remainder of the finished areas have wood with some area and throw rugs. The unfinished areas have concrete flooring.

22. Upon her initial discovery of water in the basement, Dr. Rebecca Korwin surveyed each area of it. She found moisture in the bathroom, bar/lounge, and one of the two unfinished areas (the one adjacent to the lounge); she found water in the main area and the unfinished room adjacent to it (where the sump pump is located).

23. The basement damage was extensive: the floors were warped and curling, the moldings were waterlogged, the drywall was swollen, and black mold began appearing on the subfloor, ceiling and walls.

24. A second inspection by revealed that the water was coming up from the basement drains or sump pump.

### INITIAL REMEDIATION

25. The Korwins hired the company Dynamerican to investigate and remediate the damage in the garage and basement. Dynamerican opined that the local storm sewers could not handle an unusually heavy rain, that the Korwin home was on the low point of the neighborhood, and when the drains were overcome with storm sewer water, the excess backed up into the home. The Korwins also hired Stanley Steamer to help with the drying process.

### THE KORWINS' CLAIM

26. The Korwins promptly reported the water damage losses to State Farm.

27. On the Korwins' behalf, an inspector submitted photos of the basement floor warping to State Farm with his March 2021 report.

28. The inspector concluded that the water came up through the sump.

29. Dr. Rebecca Korwin compiled a list of items damaged in the losses and submitted it to State Farm: where possible, she described the item, including a brand or manufacturer, model number, etc., as well as some photos. Many of the items were "designer pieces" (e.g., Chanel); and many were relatively expensive.

### STATE FARM'S ADVERSARIAL "INVESTIGATION"

30. On July 28, 2020, State Farm Claim Representative Tom Clarke came to the Korwin home to conduct an "inspection" of their real and personal property losses. Mr. Clarke brought a camera.

31. Despite coming to conduct an inspection, Mr. Clarke refused to enter the Korwin home due to Covid.

32. Mr. Clarke did not conduct an inspection or perform an inventory of the Korwins' water damage and associated losses. He did not enter or inspect the basement.

33. Mr. Clarke gave Dr. Rebecca Korwin permission to use his camera to take photographs of the basement, garage, and damage personal property. Dr. Korwin took dozens of photos and returned the camera to Mr. Clarke.

34. Mr. Clarke or someone else at State Farm deleted or otherwise spoliated the photos Dr. Korwin had taken on Mr. Clarke's camera (the "Clarke photos").

35. Mr. Clarke is no longer employed by State Farm.

36. On July 29, 2020—just one day after his "inspection" of the Korwin loss—Mr. Clarke advised the Korwins by letter that State Farm intended to cover any items damages in the garage "since the water came up through the drains within the dwelling," but would not cover damage to the basement "because the drains are located outside the dwelling."  Mr. Clarke cited portions of the State Farm policy regarding "Losses Insured" and "Losses Not Insured," but did not mention any part of the Endorsement.  Mr. Clarke's letter is attached as **Exhibit B**.

37. Mr. Clarke had not conducted a physical investigation to reach his opinion that drains *outside* the dwelling had caused the water damage in the basement.

38. The Korwins hired an attorney to negotiate with State Farm, and they retained an expert, Steven Reckner of Reckner Certified Home Inspection, to assess how the water intruded into the basement.

39. Following a February 25, 2021 inspection, Mr. Reckner issued a report which noted various area of water damage and observed that, "Like the damage done to the garage and its contents … any and all resulting water damage inspected and verified in the residence was caused by interior home drains, not any exterior drains or the like."  Mr. Reckner's report is attached as **Exhibit C**.

40. Mr. Reckner's report was supplied to State Farm.

41. At some point during the adjusting of the Korwins' claim, State Farm retained outside counsel, attorney Joe Ritzler, who is co-chairman of his firm's litigation practice, to provide "tireless representation" to the "large[ ] insurance compan[y]."

42. On September 22, 2021, Mr. Ritzler examined Drs. Douglas and Rebecca Korwin under oath, at considerable length, in great detail, and over a wide range of topics.

6

43. On July 1, 2022, Mr. Ritzler delivered State Farm's "final coverage decision" to the Korwins by letter.

44. The final coverage decision was made by State Farm Claims Specialist Jasmine Briggs. At the time of her decision, neither Ms. Briggs nor any expert or inspector employed by State Farm had examined the premises or issued an analysis to support Mr. Clarke's initial opinion that the mechanism of the water damage in the basement was not the drains or sump pump in the basement—and instead was from some "external drain."

45. State Farm's decision was made without any reference to Mr. Reckner's report, opinion, and inspection.

### GROUNDS FOR ESTOPPEL

46. State Farm should be estopped from denying the Korwins coverage of their losses—and to the extent and valuation claimed—by virtue of State Farm's inaction: State Farm failed to conduct a complete and adequate investigation, to photograph and value the damaged items, and to conduct an appraisal before making its coverage and valuation decisions, all to the prejudice of the Korwins, who relied on State Farm to proceed as a reasonable insurer and according to its obligations under the insurance contract, including the implied duties of good faith and fair dealing.

47. State Farm should separately and independently be estopped from denying the Korwins coverage of their losses—and to the extent and valuation claimed—and be estopped from denying the sufficiency of the proof of loss by virtue of State Farm's tardiness in response to the Korwin's notice of claim for covered (or potentially covered) losses, as well as by State Farm's failure to conduct a complete and adequate investigation, to photograph and value the damaged items, and to conduct an appraisal before making its coverage and valuation decisions, all to the prejudice of the Korwins, who relied on State Farm to proceed as a reasonable insurer and according to its obligations under the insurance contract, including the implied duties of good faith and fair dealing.

### FIRST CAUSE OF ACTION

#### SPOLIATION OF EVIDENCE

48. Plaintiffs incorporate all of the foregoing paragraphs of this complaint into this cause of action.

49. As of July 29, 2020, coverage litigation between the Korwins and State Farm was probable, and State Farm and its agents, specifically Mr. Clarke and others assigned to the Korwin claim, knew that such litigation was probable.

50. State Farm, through its agent, Mr. Clarke or someone else, willfully destroyed the Clarke photos, which was designed to disrupt the Korwins' case—and it has done so, depriving the Korwins of photographic evidence of the damaged personal property at issue in this claim prior to its disposal and/or repair.

51. As a proximate result of State Farm's spoliation of evidence, the Korwins have sustained damages, including an adverse decision on coverage, extent of coverage, and valuation of losses, delay of resolution (and therefore interest), as well as costs and fees associated with this suit for damages.

52. Moreover, pursuant to the Rules of Evidence, the Court should adopt an inference adverse to State Farm related to the spoliated evidence.

### SECOND CAUSE OF ACTION

#### INSURER'S BAD FAITH

53. Plaintiffs incorporate all of the foregoing paragraphs of this complaint into this cause of action.

54. As the Korwins' insurer, State Farm was required to exercise good faith in the processing of their claim.

55. State Farm failed to exercise good faith because its refusal to properly pay the Korwins' claim was not predicated upon circumstances that furnish reasonable justification therefor.

56. As a proximate result of State Farm's failure to exercise good faith, the Korwins have sustained damages, including an adverse decision on coverage, extent of coverage, and valuation of losses, delay of resolution (and therefore interest), as well as costs and fees associated with this suit for damages.

### THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

57. Plaintiffs incorporate all of the foregoing paragraphs of this complaint into this cause of action.

58. The Policy and Endorsement constitute a written contract obligating State Farm to provide the Korwins insurance coverage for the loss in the garage and the loss in the basement.

59. State Farm breached the contract by failing to provide full and proper coverage to the Korwins for their covered losses.

60. As a result of State Farm's breach of contract, the Korwins have sustained economic damages equal to the repair, remediation, and replacement costs, as well as the diminution in value, of the real and personal property affected by the losses.

### FOURTH CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

61. Plaintiffs incorporate all of the foregoing paragraphs of this complaint into this cause of action.

62. State Farm owed the Korwins duties of good faith and fair dealing.

63. These duties impose on State Farm an obligation to conduct any necessary investigation in a timely fashion *before* denying or limiting coverage.

64. These duties also require State Farm, if it has reason to believe there may be a coverage issue, to immediately discontinue seeking information from the insured and instead to provide prompt notice of the coverage issue.

65. State Farm breached both of these duties; as a direct result of these breaches, the Korwins have sustained damages, including an adverse decision on coverage, extent of coverage, and valuation of losses, delay of resolution (and therefore interest), as well as costs and fees associated with this suit for damages.

## PRAYER FOR RELIEF

Therefore, the Korwins demand judgment against State Farm in an amount in excess of $75,000 on their complaint for compensatory damages, as well as punitive damages, pre- and post-judgment interest, attorneys' fees, costs of suit, and expenses, as well as any other relief that may be appropriate under the law.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted

s/ Drew Legando
Drew Legando (0084209)
Merriman Legando Williams & Klang, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com

*Counsel for Plaintiffs*