# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA KORWIN, et al., | ) | CASE NO. 5:23-cv-1124 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| STATE FARM FIRE & | ) | **AND ORDER** |
| CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is a motion for summary judgment filed by defendant State Farm Fire &

Casualty Company ("State Farm"). (Doc. No. 33 (MSJ).) Also before the Court is a motion by

plaintiffs Rebecca and Douglas Korwin (the "Korwins") to deem certain of State Farm's summary

judgment arguments waived. (Doc. No. 39 (Motion to Deem Waived).) Both motions are fully

briefed and ripe for disposition. For the reasons set forth herein, State Farm's motion for summary

judgment is GRANTED IN PART AND DENIED IN PART, and the Korwins' motion to deem

certain summary judgment arguments waived is GRANTED.

## I.      BACKGROUND

In September 2019, plaintiffs Rebecca and Douglas Korwin purchased a new home in

Akron, Ohio, and entered into a homeowners insurance contract with State Farm. (Doc. No. 1

(Complaint) ¶¶ 6, 13; *see also* Doc. No. 1-1 (Policy).) The policy included a special "Back-Up of

Sewer or Drain Endorsement," which provided coverage for damage "caused by back-up of water

. . . from outside the residence [] plumbing system that enters through a sewer or drain located

inside the interior of the dwelling; or that . . . overflows from within a sump pump, sump pump well," or similar systems. (Doc. No. 1 ¶ 14.)

On or about June 21, 2020, during a period of heavy rainfall in the Akron area, the Korwins discovered "water actively backing up through the drain in [their] garage." (Doc. No. 34-2 (Korwin Decl.) ¶ 2.) This influx of water damaged personal property they had been storing in the garage. (*Id.*) Later that day, the Korwins discovered that certain areas of their basement floors were also water-logged, resulting in damage to floors, carpets, and woodwork. (*Id.* ¶ 3.) "Over time, this water damage spread and created mold and other problems." (*Id.*) In response, the Korwins "hired a restoration company to work on the damage." (*Id.*) The Korwins timely submitted a claim to State Farm for their losses on June 30, 2020. (*Id.* ¶ 4; *see also* Doc. No. 33, at 3 (citing Doc. No. 33-1 (Kaplan Affidavit) ¶ 8).)

At the time, State Farm had implemented COVID-19 policies that included a preference for virtual inspections of claims, requesting policyholders to submit documentation of losses for remote evaluation. (Doc. No. 33, at 3 (citing Doc. Nos. 33-1 ¶ 21, 33-4).) Between June 30 and July 21, 2020, State Farm contends that it "made reasonable efforts to communicate with Rebecca Korwin," requesting documentation, videos, and pictures to support the claim. (*Id.* (citing Doc. Nos. 33-1 ¶¶ 9–2[1], 33-4–33-6).) However, the Korwins apparently had trouble electronically transmitting documentation of the damage to State Farm and were ultimately unable to send photos or videos as State Farm requested. (*Id.*; *see also* Doc. No. 33-1 ¶¶ 9–23.)

Accordingly, despite its preference for virtual inspections, on July 28, 2020, State Farm sent claim handler Tom Clarke, who is no longer employed by State Farm, to conduct a physical inspection of the Korwin residence. (Doc. No. 33-1 ¶¶ 24–26.) Due to COVID-19 precautions,

---

[1] This pincite is presumably a typographic error and was meant to refer to ¶¶ 9–23 of the Kaplan affidavit.

however, Mr. Clarke did not enter the home. (Doc. No. 33, at 3 (citing Doc. No. 33-1 ¶ 25).)

Instead, "he inspected the property's back yard, the patio where the hot tub was located, the doors

to the basement and interior through the doorway, the open garage, and driveway." (*Id.*) During

the inspection, Mr. Clarke spoke with Rebecca Korwin. (*Id.*) The parties dispute the contents of

the conversation. According to State Farm, Ms. Korwin "advised [Mr. Clarke] that the water came

from outside the home because the outside drains could not keep up [with the rainfall], and water

damaged the hot tub and entered the basement." (*Id.* at 3–4.) However, according to plaintiffs, Ms.

Korwin told Mr. Clarke that "it was the heavy rains that must have backed up into the drains and

sump of the house, but that [she] did not know for sure." (Doc. No. 34-2 (Korwin Decl.) ¶ 6.)

Thereafter, Mr. Clarke took pictures of the interior of the basement from the doorway and

provided his camera to Ms. Korwin to take additional interior photos. (Doc. No. 33-1 ¶¶ 25–26;

Doc. No. 33, at 4; Doc. No. 34-2 ¶ 7.) The parties dispute the number of photos taken and

preserved. (*Compare* Doc. No. 33, at 4 (State Farm claiming that Ms. Korwin "only took one

picture of the garage")[2] *with* Doc. No. 34-2 ¶ 7 (Ms. Korwin stating that she "took dozens and

dozens of pictures").)

On July 29, 2020, the day after Mr. Clarke's inspection, State Farm issued an initial

coverage determination reportedly based on the inspection and information provided by the

Korwins. (Doc. No. 33-1 ¶ 27; *see also* Doc. No. 33-7 (Clarke Letter).) State Farm provided

coverage for damage in the garage "because the water entered via an interior drain." (Doc. No. 33-

1 ¶ 27 (citing Doc. No. 33-7).) However, State Farm denied coverage for the basement and hot tub

damage "because the drains are located outside of the dwelling and [the policy does] not provide

---

[2] Although State Farm cites to paragraphs 25–26 of the Kaplan affidavit as support for this statement, those paragraphs
do not aver that Ms. Korwin took only one picture. Rather, paragraphs 33–34 are the only portions of the Kaplan
affidavit suggesting that Ms. Korwin took only one picture, but neither is based on Mr. Kaplan's personal knowledge.

coverage for damages caused by backed up drains located outside of the dwelling." (*Id.*) The July 29, 2020 decision letter was reportedly reviewed and approved by a State Farm manager before being sent to the Korwins. (*Id.* ¶ 28.) Notably, the denial of coverage was not based on a lack of information, but rather upon State Farm's affirmative determination of the source of the water. However, the letter does not articulate any reason for its conclusion that the water overflowed from exterior drains. (*See generally* Doc. No. 33-7.)

The Korwins disagreed with State Farm's assessment and took steps to challenge it. (*See* Doc. No. 34, at 9.) They retained an attorney to represent their interests and hired Steven Reckner, a licensed inspector who had also inspected their home prior to their purchase (Doc. No. 1 ¶ 6), to conduct a professional third-party inspection of the property. (Doc. No. 34, at 9; *see also* Doc. No. 34-2 ¶ 10.) Mr. Reckner inspected the Korwins' property and authored a report on February 25, 2021, approximately eight months after the incident. (Doc. No. 33-17 (Reckner Report), at 1.) His report concluded that, "like the damage done to the garage and contents of the garage—unlike the exterior hot tub—any and all resulting water damage inspected and verified in the residence [i.e., the basement] was caused by interior home drains, not any exterior drains or the like." (*Id.* at 6.) On March 10, 2021, the Korwins, via their attorney, provided this report to State Farm, as well as an August 19, 2020 estimate from Tim Englert Construction for repairs to the basement. (Doc. No. 33-1 ¶ 40.)

State Farm's response to these materials is disputed. The Korwins allege that State Farm disregarded them without justification and arbitrarily maintained its initial position that the water came from exterior drains, and not interior drains or the sump. (Doc. No. 34, at 9.) State Farm, however, contends that it "evaluated its own inspection, all of the photos, videos, receipts, correspondence, estimates, reports, transcripts, and statements by the Korwins and the timeline of

events to determine which items were covered under the policy . . . ." (Doc. No. 33-1 ¶ 44 (citing Doc. No. 33-19 (Briggs Letter)).) Notably, however, the Briggs Letter does not support State Farm's expansive list of materials reviewed; rather, the Briggs letter simply states that State Farm "reviewed [the Korwins'] statement, in addition to the videos and photos [they] provided . . . ." (Doc. No. 33-19, at 1.) In any event, State Farm hired an outside litigator to handle the claim in April 2021, who conducted under-oath examinations of the Korwins in September 2021. (Doc. No. 33-1 ¶¶ 41, 43.) Throughout the relevant period, State Farm "consistently denied coverage for the basement, hot tub, deck, [and] retaining wall." (*Id.* ¶ 46 (citing Doc. Nos. 33-7, 33-10, 33-15, 33-19).)

On June 5, 2023, nearly three years after the water damage incident, the Korwins filed a complaint against State Farm in federal court. The complaint alleged four causes of action: (1) spoliation of evidence, pertaining to the alleged destruction of the photos Ms. Korwin claims she took on Mr. Clarke's camera; (2) insurer's bad faith, for State Farm's claim processing and ultimate denial of coverage; (3) breach of contract, for State Farm's alleged failure to provide "full and proper coverage"; and (4) breach of the implied covenant of good faith and fair dealing. (*See generally* Doc. No. 1.)

On January 18, 2024, State Farm moved for judgment on the pleadings, arguing that the Korwins' claims were untimely under the plain terms of the policy, which included a limitations provision requiring that all claims be brought with one year of the damage or loss. (*See generally* Doc. No. 20.) On April 8, 2024, the Court granted the motion, in part, dismissing plaintiffs' contract-based claims (Counts III and IV), but finding that the bad faith and spoliation claims (Counts I and II) are tort-based and therefore not subject to the limitations provision in the parties' contract. (*See generally* Doc. No. 26.) On May 7, 2024, less than a month after the ruling on the

5

motion for judgment on the pleadings, State Farm moved for summary judgment on the Korwins'

two remaining claims. (Doc. No. 33.) Plaintiffs timely responded (Doc. No. 34) and State Farm

replied. (Doc. No. 38.)

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary

materials in the record show that there is "no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586

F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of

genuine issues of material fact and its entitlement to judgment as a matter of law, which may be

accomplished by demonstrating that the nonmoving party lacks evidence to support an essential

element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). Then,

if the movant meets its burden, the nonmoving party must "set forth specific facts showing that

there is a genuine issue for trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D.

Ohio 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The "mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson*, 477 U.S. at 247–48; *see also Longaberger*, 586 F.3d at

465. "Only disputed material facts, those 'that might affect the outcome of the suit under the

governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d

696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

A district court considering a motion for summary judgment may not weigh evidence or

make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379

(6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ("[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" (quoting *Anderson*, 477 U.S. at 255)).

However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (citation omitted). Further, an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III.   DISCUSSION

### A.   Count I (Spoliation of Evidence)

State Farm argues it is entitled to summary judgment on plaintiffs' spoliation claim for three reasons: (1) "spoilation [*sic*] is not a claim in federal court"; (2) the Korwins' "controlled the evidence they claim was spoiled"; and (3) the Korwins "cannot point to anything in the record to show that State Farm knew on July 29, 2020, that litigation was probable, willfully destroyed

photographs, destroyed photographs, or delayed resolution of their claim by allegedly destroying photographs," or that the "alleged destruction of personal property photographs adversely effected [*sic*] the coverage decision against Plaintiffs, extent of coverage offered, valuation of losses, or delayed resolution." (Doc. No. 33, at 12–14.)

Plaintiffs did not respond to State Farm's spoliation arguments in their opposition brief except to note that the Court, in ruling on the motion for judgment on the pleadings, "found that the spoliation claim is not a cause of action but is 'evidentiary in nature.'" (Doc. No. 34, at 10 (quoting Doc. No. 26, at 18).) Because plaintiffs failed to meet their burden in opposing summary judgment on this claim, they are deemed to have abandoned Count I of the complaint (Doc. No. 1) and waived any argument concerning its dismissal. *Hicks v. Concorde Career Coll.*, 449 Fed. App'x. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion"); *Hadi v. State Farm Ins. Cos.*, No. 2:07-cv-60, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding plaintiff "apparently concedes that summary judgment is proper" on his negligent infliction of emotional distress claim because he did not respond to defendants' motion for summary judgment regarding that claim).

In any event, the Court agrees that spoliation is not a standalone cause of action in federal court. *See Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (en banc) (holding that federal law applies to spoliation issues raised in federal court, and that such issues are "evidentiary in nature"). Therefore, summary judgment is appropriate as to Count I.

### B.        Count II (Insurer's Bad Faith)

#### 1.        *Ohio Law Regarding Insurer's Bad Faith*

An insurer has a legal duty "to act in good faith in the handling and payment of the claims of its insured." *Great West. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 979 (S.D. Ohio 2009) (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1316 (Ohio 1983)). "[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399–400 (Ohio 1994).

Under Ohio law, an insurer lacks reasonable justification for its denial when its refusal to pay is predicated on an arbitrary and capricious belief that the insured is not entitled to coverage. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E. 2d 1315, 1320 (Ohio 1983); *Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 979 (S.D. Ohio 2009). Arbitrary and capricious decisions are those "made without consideration of or regard for facts, circumstances, fixed rules, or procedures." *Marshall v. Colonial Ins. Co.*, No. 15-ma-0196, 2016 WL 7290968, at *42 (Ohio Ct. App. Dec. 9, 2016) (citing Blacks' Law Dictionary (10th Ed. 2014)); *Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc.*, No. 1:19-cv-073, 2019 WL 5557343, at *5 (S.D. Ohio Oct. 28, 2019) ("A bad faith claim may be stated where the plaintiff alleges that the insurer 'acted in bad faith by failing to investigate his claim, failing to apply provisions of [the] policy, and failing to interpret the policy in [the insured's] favor.'") (citation and quotation marks omitted), *report and recommendation adopted*, No. 1:19-cv-73, 2019 WL 6131267 (S.D. Ohio Nov. 19, 2019). On a motion for summary judgment, "Ohio law directs courts to assess bad-faith-denial-of-coverage claims from the perspective of what information motivated the insurer's denial." *Smith v. Allstate Indem. Co.*, 304 F. App'x 430, 432 (6th Cir. 2008).

2.      *Analysis*

Here, the Korwins contend that State Farm denied their claim without reasonable justification because it "improperly clung to Clarke's snap judgment that the water came from somewhere other than up through the basement drains and sump despite a lack of any real evidence, without its own investigation by experts, and all while rejecting the third-party expert report provided by the Korwins." (Doc. No. 34, at 19.) More specifically, the Korwins assert that State Farm acted in bad faith by: (1) failing to "conduct a physical inspection of the basement to examine the drains and sump well to determine whether the water had backed-up from them"; (2) denying the claim even though it "did not find any physical evidence to support its notion that the water had somehow infiltrated the basement from somewhere other than the sewers or drains inside the house"; and (3) "fail[ing] to credit" the conclusions of the Reckner report "that the rainwater had backed-up through the sewer, drains, and sump." (*Id.* at 7–8; *see also* Doc. No. 1 ¶¶ 32, 36–40, 44–45, 55.)

State Farm moves for summary judgment, asserting that there "are no genuine issues of material fact" and that it handled the Korwins' claim appropriately and in good faith as a matter of law. (Doc. No. 33, at 12.) As best the Court can discern, there are three general threads to State Farm's argument.

First, State Farm claims that it "evaluated everything submitted to it by Plaintiffs, its own inspection, pictures, investigation, and utilized evaluation tools, to make" the relevant coverage determinations. (*Id.* at 11–12.) Therefore, State Farm suggests, its "decisions were not arbitrary or capricious, and showed State Farm's efforts to work in good faith with Plaintiffs to provide coverage for items that Plaintiffs could demonstrate were damaged in the garage during the June 21, 2020 event." (*Id.* at 12.) However, State Farm fails to provide the Court with any insight as to

10

whether or how its evaluation of these materials impacted its determination that the damage was caused by water overflow from exterior drains, as opposed to interior drains or the sump. (*See generally id.*) State Farm's contention that it "evaluated" all submitted materials does not, by itself, insulate its coverage determination from scrutiny. Rather, the salient issue is whether the coverage determination was reasonably justified *in light of* these materials. Other than paragraph 25 of the Kaplan affidavit, which is in dispute and is addressed below, State Farm offers nothing to demonstrate that it was. *See Toman v. State Farm Mut. Auto. Ins. Co.*, No. 102483, 2015 WL 4979577, at *7–10 (Ohio Ct. App. Aug. 20, 2015) ("The Tomans contend that the adjustor's 'conclusory opinion' did not constitute a 'reasonable justification' for its decision as a matter of law and that, construing the evidence most strongly in their favor, a genuine issue of material fact existed as to whether State Farm lacked a reasonable justification for its handling of her UIM claim. We agree.").

*Toman* is particularly instructive. There, Ohio's Eighth District Court of Appeals made clear that "it is not enough that [the claims adjustor] determined, purely as a matter of his personal opinion," that the insured "was not entitled to any payment" on her claim. *Id.* at *8. Rather, because the adjustor "was the sole decisionmaker" on the insured's claim, "to prevail on its summary judgment motion, State Farm needed to present evidence establishing that there was no genuine issue of fact that its justification [for denying the claim] . . . was reasonably based on the relevant facts." *Id.* There, as here, the adjustor claimed that his determination "was based on a variety of facts and information," but there was nothing in the record "that explain[ed] how [those] facts and information allegedly factored into" the determination. *Id.* Therefore, "[b]ased on the evidence presented," the court found that "State Farm failed to meet [its] burden" on summary judgment. *Id.* ("The gap in the record, i.e., the absence of any evidence demonstrating the reasoning behind

11

[the determination] and its relationship to the facts, precludes a finding, as a matter of law, that State Farm had a reasonable justification for its decision [to deny the claim].”). That is precisely the case here, where, as in *Toman*, State Farm has not presented “any evidence demonstrating the reasoning behind [the determination] and its relationship to the facts . . . .” *Id.*

Second, State Farm takes issue with the Reckner report and Englert estimate, as well as the Korwins’ apparent technical difficulties in transmitting photos and videos of the basement to State Farm, either via email or by uploading them to what appears to be State Farm’s online portal, “claims xperence.” (Doc. No. 33, at 4–5, 11–12; *see also* Doc. No. 33-1 ¶¶ 9–23, 25(c), 25(f), 30, 33, 34, 38(c), 38(f), 39–40.) However, State Farm did not deny coverage based on a lack of documentation, but rather on its affirmative determination that the water damage to the garage was caused by overflow from exterior drains. (*See generally* Doc. No. 33-7.) Accordingly, while State Farm’s concerns regarding plaintiffs’ documentation (or lack thereof) may well be legitimate, they neither explain nor support State Farm’s determination as to the source of the water in the basement. The Korwins’ lack of electronically-submitted documentation and any issues with the Reckner report or Englert estimate therefore do not establish the reasonableness of State Farm’s determination, as is required to prevail at summary judgment. *See Toman*, 2015 WL 4979577, at *7–10.

Third, State Farm relies heavily on the alleged—and disputed—statement by Ms. Korwin that she “advised [Mr. Clarke] that the <u>water came from outside the home because the outside drains could not keep up</u>, and water damaged the hot tub, and entered the basement.” (*Id.* at 10 (emphasis in original) (citing Doc. No. 33-1 ¶ 25).[3]) In fact, plaintiffs argue, and the Court agrees,

---

[3] State Farm also asserts, in a single sentence devoid of analysis, that “[t]he Korwins failed to comply with their Duties After Loss, Appraisal Provisions, and Suit Against Us breaching the terms of their policies; therefore, denial of their claims is also reasonably justified.” (Doc. No. 33, at 12 (citing Doc. Nos. 33-1 ¶¶ 47–48, 33-2).) This argument is rejected. First, “[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

that Ms. Korwin's alleged statement is the *only* explanation that State Farm articulates for its determination of the source of the water. (*See, e.g.*, Doc. No. 38 (MSJ Reply), at 4 (after reciting Ms. Korwins' alleged statement, stating that Mr. Clarke "[c]onsequently" denied coverage).)

However, the only evidence that State Farm submits to establish its version of Ms. Korwin's alleged statement is paragraph 25 of the Kaplan affidavit. Brad Kaplan is the "Team Manger [*sic*] overseeing" the Korwins' claim since approximately June 16, 2023, at which time he received the file "from the former Claims Specialist Jasmine Briggs." (Doc. No. 33-1 ¶¶ 1–2, 5.) Paragraph 25 of the Kaplan affidavit purports to recite Mr. Clarke's notes from the July 28, 2020 inspection, which in turn purport to recount the conversation between Mr. Clarke and Ms. Korwin. According to Mr. Kaplan's characterization of Mr. Clarke's description of the conversation, Ms. Korwin "advised [Clarke] that the water came from outside the door then leaked into the house and also damaged the hot tub." (*Id.* ¶ 25(i).) State Farm has not identified any other reason for Mr. Clarke's determination that the relevant damage was caused by water backup from exterior drains.

Plaintiffs lodge several objections to the Kaplan affidavit, and paragraph 25 in particular. They claim that the affidavit "suffers from myriad evidentiary defects such that it must be disregarded and cannot be used to make the prima facie showing required of State Farm." (Doc. No. 34, at 11.) Specifically, plaintiffs make the following objections: (1) State Farm, in its initial disclosures, did not identify either Mr. Kaplan as a potential witness or Mr. Clarke's notes as

---

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (alterations omitted). Second, the coverage denial necessarily occurred prior to any alleged breach by the Korwins related to their disagreement of the denial. Therefore, any such post-denial breach cannot justify the denial. Third, State Farm has never represented that it denied coverage based on a lack of information. Instead, it stands by its conclusion that the water overflowed from exterior drains. Under Ohio law, then, it must demonstrate that that conclusion was reasonably justified.

potential evidence (*id.* at 12–13); (2) Mr. Kaplan has no personal knowledge of the conversation (*id.* at 13–14); (3) Mr. Kaplan's characterization of Clarke's notes "is not the Best Evidence of what the notes may say" (*id.* at 13–15); and (4) Mr. Kaplan's characterization of Mr. Clarke's notes of the conversation is inadmissible double hearsay (*id.* at 15–16). Without use of the Kaplan affidavit, the Korwins contend that "State Farm fails to meet its burden of production, [and] the Korwins are not obligated to make any further showing[.]" (*Id.* at 11.) Nevertheless, plaintiffs contend that even if the Court were to consider the Kaplan affidavit, genuine issues of material fact would remain. (*Id.*)

The Court need not wade into the debate as to whether plaintiffs' evidentiary objections have merit because, even if the contents of the Kaplan affidavit may be considered by the Court, there would remain a genuine issue of material fact. Indeed, although the parties agree that a conversation took place between Mr. Clarke and Ms. Korwin, they dispute the specifics of Ms. Korwin's statement. Mr. Kaplan avers that Mr. Clarke wrote that Ms. Korwin said she believed the water came from exterior drains. Ms. Korwin, however, disputes that account. (*See* Doc. No. 24-2 ¶ 6.) Specifically, Ms. Korwin contends that while she and Mr. Clarke "briefly spoke at the threshold of [her] home," she "told him it was the heavy rains that must have backed up into the drains and sump of the house, but that [she] did not know for sure." (*Id.*)

Therefore, the only piece of evidence that State Farm submits as proof that its coverage determination was reasonable is in dispute, rendering summary judgment improper. *See Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020) ("Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial. That appears to be the case here."); *Shazor v. Prof. Transit Mgt., Ltd.*, 744 F.3d 948, 960 (6th Cir. 2014) (reversing grant of summary judgment where the case was "little more

than a he-said, she-said," and finding that "Plaintiff's sworn testimony [disputing defendant's version of events was] enough to create a genuine issue of fact"); *Shepherd v. Gillilan*, No. 2:19-cv-00019, 2020 WL 4530883, at *1 (M.D. Tenn. Aug. 6, 2020) ("Because those declarations comprise the bulk of the evidence before the Court and they present the quintessential and literal 'he said – she said' dispute, summary judgment will be denied . . . ."); *E.E.O.C. v. Indi's Fast Food Rest., Inc.*, No. 3:15-CV-00590-JHM, 2017 WL 4848822, at *6 (W.D. Ky. Oct. 26, 2017) ("In this type of 'he said, she said' situation, it is the responsibility of a fact-finder to determine what events occurred."); *Porter v. Progressive Directions, Inc.*, No. 3:10-00585, 2011 WL 2471541, at *7 (M.D. Tenn. June 21, 2011) ("Because the only evidence before the Court are conflicting Affidavits, this is the quintessential 'he said, he said' case. Such cases are not susceptible to summary resolution . . . .") (collecting cases).

C. **Plaintiffs' Motion to Deem Certain Summary Judgment Arguments Waived**

Shortly after State Farm filed its reply brief in support of summary judgment (Doc. No. 38), plaintiffs filed a motion requesting that "the Court disregard certain arguments that were raised for the first time in" State Farm's reply brief. (Doc. No. 39, at 1.) State Farm timely responded. (Doc. No. 40.)

In their motion, plaintiffs take issue with two arguments raised in State Farm's reply brief. First, plaintiffs object to State Farm's argument that summary judgment is proper because "'there is simply no record evidence before this Court setting forth the damages Plaintiff [*sic*] alleges was caused by State Farm's bad faith claim.'" (*Id.* (quoting Doc. No. 38, at 10).) State Farm responds that this argument was implied by the statement in their opening that plaintiffs "'cannot *demonstrate* that State Farm's coverage decisions . . . was [*sic*] unreasonable or in bad faith.'" (Doc. No. 40, at 1 (emphasis in original) (quoting Doc. No. 33, at 14).)

15

Second, plaintiffs object to State Farm's argument that the bad faith claim "requires expert support," and that plaintiffs' failure to provide such expert support dooms their claim. (*See* Doc. No. 39, at 2.) State Farm responds that plaintiffs' "failure to set forth evidence of sworn expert support that this water damage was caused by indoor drains (as opposed to outdoor drains) is simply an extension of the argument Plaintiffs failed to evidence bad faith." (Doc. No. 40, at 2.)

Plaintiffs' motion is well-taken. State Farm failed to adequately raise these arguments in its initial motion for summary judgment. The Court therefore declines to consider those arguments and deems them waived for purposes of State Farm's motion for summary judgment. *See Lorad, LLC v. Azteca Milling L.P.*, No. 1:20-cv-00357, 2023 WL 2572060, at *1 (N.D. Ohio Mar. 20, 2023) (collecting cases); *Hunt v. Big Lots Stores, Inc.*, 244 F.R.D. 394, 397 (N.D. Ohio 2007) (collecting cases).

## IV.     CONCLUSION

For the reasons set forth above, State Farm's motion for summary judgment (Doc. No. 33) is GRANTED IN PART AND DENIED IN PART, and the Korwins' motion to deem certain summary judgment arguments waived (Doc. No. 39) is GRANTED.

**IT IS SO ORDERED**.

Dated: August 2, 2024

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**